NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER MARTIN,<br><br>       Plaintiff,<br><br> v.<br><br>MICHAEL ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Civil Action No. 11-2879 (SDW)<br><br>**OPINION**<br><br>February 20, 2013 |

**WIGENTON**, District Judge.

  Before this Court is Plaintiff Alexander Martin's ("Plaintiff" or "Martin") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Michal L. Lissek's ("ALJ Lissek") denial of Martin's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).  Venue is proper under 28 U.S.C. § 1391(b).  Martin raises two issues on appeal: (1) ALJ Lissek erred in finding that Martin's substance use was a material factor contributing to his disability, and (2) ALJ Lissek's finding regarding Martin's residual functional capacity ("RFC") was not supported by substantial evidence.  For the reasons stated herein, this Court **AFFIRMS** ALJ Lissek's decision.

**FACTUAL HISTORY**

**A. Personal and Employment History**

Martin was born on March 20, 1961. (R. 30.) He graduated from West Side High School in Newark, New Jersey. (R. 32.) Martin attended Upsala College for two years, before dropping out. (R. 163.) From 1981 to 1985, Martin worked as a security specialist for the Air Force. (R. 32, 567.) In 1987, Martin began working as a corrections officer at Rahway Prison. (R. 32, 33.) In 1995, because of his heroin usage, Martin was forced to resign from Rahway Prison because it was difficult for him to interact with his coworkers and the inmates. (R. 33-35, 159.)

Subsequently, Martin's psychological problems and continued heroin use prevented him from maintaining steady employment. (R. 34-35, 101, 159.) From 1997 to 2000, Martin periodically performed warehouse work at Shop Rite, Pathmark, and Key Food Supermarkets. (Pl.'s Br. 2.) As a warehouse worker, Martin labeled boxes with stickers and moved boxes around the warehouse. (R. 34-35.) Because Martin had difficulty remembering how to label boxes properly, he lasted an average of a month and a half at each warehouse job. (R. 35.) Martin has been unable to work since 2002. (R. 19, 38.)

**B. Medical History**

Martin began using opiates at the age of thirty-one, approximately in 1992. (R. 159.) By 2003, Martin's psychological problems, including his drug addiction, had become quite serious and he had attempted suicide on two occasions. (R. 159-64, 175-77.) Martin had been admitted to the Princeton House on seven occasions due to his persistent drug abuse and depression. (R. 159, 162, 176.) From February 14 to February 20, 2003, Martin was admitted to the Medical Center at Princeton to receive treatment for his opiate dependence. (R. 159.) Upon admission, Martin told Dr. Jose S. Vazquez ("Dr. Vazquez") that he was using "12-14 bags of heroin and up to 20 bags" of heroin per day. (R. 159.) Dr. Vazquez diagnosed Martin with opiate dependence and

2

withdrawal, "polysubstance abuse," peptic ulcer disease, and an unspecified depressive disorder. (R. 159, 162.)  Martin was also prescribed several medications for depression and anxiety.  (See R. 160-161.)

Martin was hospitalized from May 2 to May 14, 2003 for his continued heroin abuse and thoughts of suicide.  (R. 175-76, 589.)  Dr. Wilson,[1] the attending physician, diagnosed Martin with Dysthymic disorder, substance induced mood disorder, opiate dependence, and acute opiate withdrawal, among other ailments relating to his social life.  (R. 175-76.)  Plaintiff also indicated that he tried to kill himself on two occasions.  (R. 175-76.)

On December 29, 2003, Martin was seen by Dr. Lisa Zhang ("Dr. Zhang") who diagnosed Martin with major depression, heroin addiction, bipolar disorder, headaches, and heartburn.  (R. 195, 197.)  On the same day, Dr. Joseph Lamanna ("Dr. Lamanna"), a consultative psychologist, performed a psychiatric evaluation and diagnosed Martin with "bipolar disorder, in partial remission; major depressive disorder, severe with psychotic features; heroin abuse; and alcohol abuse in remission."  (R. 198-202, 590.)  Martin was then referred to the University Hospital emergency room—affiliated with the University of Medicine and Dentistry of New Jersey (UMDNJ)—where he was diagnosed with major depression and opiate dependence.  (R. 247-48.)

On February 13, 2004, Dr. M. Apacible[2] ("Dr. Apacible"), "a nonexamining state agency medical consultant, found that [Martin] had bipolar disorder in partial remission; major depression with psychotic features; alcohol abuse in remission; and continuous heroin abuse; with mild restriction of the activities of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and one or two repeated episodes of deterioration."  (R. 203-25, 590.)

---

[1] Dr. Wilson's full name is not provided in the relevant medical records.  (R. 175-76.)
[2] Dr. Apacible's full name is not provided in the relevant medical records.  (R. 203-25.)

The record shows that Martin's heroin addiction was in remission since May 2004. (R. 20, 35.) By late 2004, Martin regularly took his prescribed medications and attended monthly visits at a Veteran's Administration (VA) clinic. (R. 20, 253-81.) On August 2, 2004, Dr. Alexander Shnayderman ("Dr. Shnayderman") reported that Martin was "calm and cooperative," "mildly depressed," "logical," and had fair insight and judgment. (R. 274.) Martin indicated to Dr. Shnayderman that he was feeling better. (R. 255-56, 262, 274-76.). Based on these reports, medical expert Dr. William Gordon ("Dr. Gordon") indicated that Martin's depression had gone from "severe" to "moderate." (R. 287.)

In September 2009, Dr. Paul F. Fulford ("Dr. Fulford") of Psychometric Services diagnosed Martin with "bipolar mood disorder; alcohol abuse in remission; heroin abuse in remission" and "suicidal ideation . . . and homicidal ideation leading to the inability to work." (R. 386-88.)

**C. Testimonial History**

At the ALJ hearing held on January 25, 2005, Martin testified that he suffered from serious psychological ailments and that he hears voices telling him to kill himself and his family. (R. 41.) He testified that he panics around other people and that he cannot be near a crowd. (R. 38.) Martin also testified that he has difficulty in making any productive use of his days, noting that his concentration is poor, his medicine makes him drowsy, and that he is still depressed. (R. 40-44.) In contrast to this testimony, the medical evidence suggested that Martin's condition had improved in the preceding months. (See, e.g., R. 287.) Faced with a conflict between these reports and Martin's testimony, the ALJ credited the reports, finding Martin's testimony not credible. (R. 23.)

At the ALJ hearing on March 16, 2010, Martin testified that he experienced pain in his hips, but noted that it did not become significant until March to July 2009. (R. 571-72.) Martin

also testified that he last used heroin and alcohol in 2006 and had not suffered any relapses. (R. 574-75.)

Steven H. Feinstein ("Feinstein"), a vocational expert, also testified at the March 16, 2010 hearing. ALJ Lissek asked Feinstein to "assume a hypothetical individual with the vocational profile of the claimant." (R. 580.) Feinstein was to further assume that such an individual "is limited to jobs that take one month or less to learn and that require only occasional contact with supervisors, coworkers or the general public." (R. 580.) ALJ Lissek asked Feinstein if the hypothetical individual could perform Martin's past, relevant work. (R. 580.) In response, Feinstein testified that such an individual would not be able to perform Martin's past relevant work; however, the individual could perform other types of "light level" work in the national economy. (R. 580.) ALJ Lissek then asked Feinstein to "assume a second hypothetical individual who can do light work, but cannot concentrate well enough to understand and remember simple instructions and is unable to work at a steady pace for an eight hour work day. Would such an individual be able to perform any past, relevant work or other work?" (R. 581.) Feinstein indicated that given those limitations, an individual would not be able to work. (R. 581.)

**PROCEDURAL HISTORY**

On April 11, 2003, Martin filed an application for SSDI benefits alleging disability since January 15, 2001. (R. 18-19, 90, 93-95.) The Social Security Administration (the "SSA") denied Martin's application stating that Martin's disability was caused by his drug use. (R. 52-61.) Martin requested a hearing before an ALJ, which was held on January 25, 2005. (R. 64-74.) On June 23, 2005, ALJ Lissek issued a decision finding that Martin could perform his past relevant work as a warehouse worker and was therefore not disabled. (R. 15-23.)

On March 31, 2006, the Appeals Council denied Martin's request for review and Martin subsequently filed an appeal in the District of New Jersey. (R. 5-8, 13-14, 311.) On December

17, 2007, the District Court found that the ALJ erred in not setting forth reasons for finding that Martin's allegations were not credible and that his warehouse work was past relevant work. (R. 314-25.) Thus, the District Court reversed and remanded the case to the Commissioner of Social Security for further proceedings. (R. 314-25.) On April 29, 2009, the Appeals Council vacated the Commissioner's final decision and remanded the case to the ALJ for a new hearing. (R. 310.)

Subsequently, ALJ Lissek held a supplemental hearing on March 16, 2010. (R. 560-82.) On March 22, 2010, ALJ Lissek issued a decision finding that Martin was "not disabled" before his insured status expired on March 31, 2005. (R. 583-96.) On May 19, 2011, Martin filed the instant appeal.

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two

6

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual will be considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education,

and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]" 42 U.S.C. § 423(d)(5)(A).

In determining disability, the SSA utilizes a five-step sequential analysis.  See 20 C.F.R. § 416.920; see also Cruz, 244 F. App'x. at 479.  A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry.  See 20 C.F.R. § 416.920.  A determination of disability at steps three and five results in a finding of disability.  See id.  Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis.  See id.

Martin raises two issues on appeal: (1) ALJ Lissek erred in finding that Martin's substance use was a material factor contributing to his disability, and (2) the ALJ's finding regarding Martin's RFC was not supported by substantial evidence.

**A. Step One:  Whether Martin has performed any "substantial gainful activity"**

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  See 20 C.F.R. 416.920(b).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  See 20 C.F.R. 416.972(a).  If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  If the individual is not engaging in SGA, the ALJ proceeds to the next step.  See id.

Here, ALJ Lissek determined that Martin's insured status expired on March 31, 2005 and thus he had to establish disability on, or before, this date. (R. 589.) ALJ Lissek found that Martin had not engaged in SGA since January 15, 2001, the alleged onset date of his disability. (R. 589.)

**B. Step Two:    Whether Martin has a "severe" impairment or combination of impairments affecting his ability to do basic work activities**

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. See 20 C.F.R. 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. See id. If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. See 20 C.F.R. 416. 972(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. See id.

ALJ Lissek, at step two, determined that Martin had severe impairments of major depressive disorder and a history of heroin and alcohol addiction, currently in remission. (R. 589.) Because these impairments interfere with Martin's ability to perform basic work activities, ALJ Lissek found them to be severe. (R. 589.)

**C. Step Three:    Whether Martin's impairment matches or is equivalent to a listed impairment**

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc. Sec., 99 F. App'x. 376, 379 (3d Cir. 2004). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204

9

F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citing Burnett, 220 F.3d at 119-20).

In the instant matter, ALJ Lissek determined that Martin did not have impairments that matched or were equivalent to a listed impairment. (R. 589.) ALJ Lissek reviewed Martin's long history of heroin addiction, which has been in remission since May 2004. (R. 589-90.) Specifically, ALJ Lissek discussed Martin's prior hospitalizations, suicide attempts, and medical history relating to heroin abuse and depression. (R. 589-90.) Relying on Martin's medical history and medical records, ALJ Lissek explained that "prior to May 1, 2004, the claimant suffered from major depressive disorder and heroin addiction, which resulted in mild restriction of the activities of daily living; moderate difficulties in maintaining social functioning; marked limitations in maintaining concentration, persistence, or pace in completing job tasks; and one or two repeated episodes of deterioration." (R. 590.) Accordingly, ALJ Lissek concluded that Martin did not meet or equal the applicable listings provided by the SSA from January 15, 2001 to April 30, 2004. (R. 589.)

### D. Whether the ALJ properly determined Martin's RFC

After step three, but before considering step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. See 20 C.F.R. § 404.1545. In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 416.920(e), 416.945.

Here, ALJ Lissek determined that Martin was "unable to perform the mental activities required by competitive, remunerative, unskilled work." (R. 591.) Specifically, ALJ Lissek found that Martin "could not concentrate well enough to understand and remember simple instructions and was unable to work at a steady pace for an 8-hour day." (R. 591.) Based on medical records and testimony, ALJ Lissek concluded that Martin was disabled from January 15, 2001 to April 30, 2004; however, drug abuse was a contributing factor material to his finding of disability. (R. 591.)

### 1. Martin's substance use was a material factor contributing to his disability

"An individual shall not be considered [ ] disabled . . . if alcoholism or drug addiction [is] a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). If a claimant is disabled and there is medical evidence of the claimant's drug addiction or alcoholism, then the ALJ must "determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). In making this determination, the ALJ considers several factors. First, the ALJ has to determine "whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability" and whether the claimant could still be found disabled if he "stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). Secondly, the ALJ has to evaluate which of the claimant's "physical and mental limitations, upon which the [ALJ] based his disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." Id. If the ALJ determines that the "remaining limitations would not be disabling, [then the ALJ] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(1)(i). On the other hand, if the ALJ determines that the claimant's remaining limitations are disabling, then the claimant is considered disabled independent of his/her drug addiction or alcoholism. As a result, the ALJ will find that the

11

claimant's "drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(1)(ii).

In this matter, Martin provides several arguments attacking the ALJ's determination that his substance abuse was a material factor contributing to his disability.  First, Martin argues that "even before and after [ ] cessation of his drug use, he continued to suffer from significant mental problems which severely affected his functioning." (Pl.'s Br. 9.)  Moreover, Martin asserts that ALJ Lissek "selectively quot[ed]" from the August 2004 VA records and did not provide a full review of the progress notes. (Pl.'s Br. 13.)  Martin rejects ALJ Lissek's conclusion that Dr. Fulford's September 2009 exam is irrelevant because it was performed long after his last insured date. (Id.)  To the contrary, he argues that Dr. Fulford's opinion "lend[s] support to the plaintiff's recurrent and ongoing mental symptoms and their functional limitations . . . [and] have persisted since Mr. Martin's onset date, despite him being 'clean' from drugs." (Pl.'s Br. 14.)  Finally, Martin argues that ALJ Lissek failed to specify the particular limitations that would remain if Plaintiff stopped the substance abuse. (Pl.'s Br. 15.)

This Court finds that ALJ Lissek properly relied on evidence in concluding that the drug abuse was a material factor contributing to his disability.  ALJ Lissek considered the reports of Dr. Lamanna and Dr. Zhang in December 2003, and the reports of Dr. Apacible and Dr. Gordon in 2004. (R. 590.)  Specifically, Dr. Gordon's report noted that Plaintiff was markedly impaired while using illicit drugs, but that his mental status improved significantly upon maintaining abstinence. (R. 590).  Dr. Apacible also noted that Plaintiff's drug addiction was material to his depression. (R. 225.)  Because this Court finds that ALJ Lissek gave appropriate consideration to all the evidence, this Court must give deference to ALJ Lissek's findings that Martin's substance use was a material factor contributing to his disability.  Thus, for purposes of SSDI, Martin was properly found "not disabled." (R. 591.)

## 2. ALJ Lissek's Assessment of Martin's RFC Was Supported By Substantial Evidence

Martin argues that "[t]here is no evidence in the record from any treating, examining, or non-examining physician which supports the ALJ's [RFC] assessment." (Pl.'s Br. 16.) Martin states that ALJ Lissek's finding that he is limited to light work is contrary to the State Agency's non-examining consultant's opinion that he could perform medium work. (Pl.'s Br. 16.) Additionally, Martin claims that ALJ Lissek selectively relied on a hypothetical posed to the vocational expert that did not accurately reflect Martin's impairments and focused only on negative aspects. (Pl's. Br. 19.)

This Court finds that ALJ Lissek properly considered physicians' opinions in the record. Furthermore, ALJ Lissek's findings are supported by medical records. (See R. 589-91.) ALJ Lissek's evaluation of Martin's RFC is supported by Dr. Gordon's assessment that Martin "was markedly impaired in most areas. His mental status improved significantly upon maintaining abstinence." (R. 591, 290.) Further, Dr. Gordon's treatment notes indicate that Martin had moderate limitations with understanding, remembering, carrying out instructions, interacting with supervisors and coworkers, and responding appropriately to work pressures and changes in routine work. (R. 591, 288-290.)

Additionally, the ALJ's findings are supported by Dr. Lamanna's notations that Martin was still using heroin in December 2003, Martin had poor stress tolerance, and he "may have difficulty making appropriate decisions [and] . . . relating adequately to others." (R. 590, 201.) ALJ Lissek also considered the State Agency consultant Dr. Apacible's findings that Martin had difficulty with social functioning and increased depression and hospitalizations while under the influence of drugs. (R. 590, 225.) Finally, ALJ Lissek also considered the testimony of vocational expert Feinstein who testified at the March 16, 2010 hearing that an individual with

Martin's type of vocational profile could not perform work with such limitations. (R. 591.) Accordingly, ALJ Lissek properly assessed Martin's RFC in light of his impairments. (R. 591.)

### 3. Martin's Credibility

Martin contends that ALJ Lissek's decision that he lacked credibility is deficient. (Pl.'s Br. 14.) He argues that "she failed to enunciate which of his statements she found not credible. She also failed to evaluate Mr. Martin's pain or any of his other symptoms." (Id.) He argues that although ALJ Lissek stated that Martin's statements were based on a consideration of the entire case record, in reality she just "cherry-picked" from the record. (Id.)

With respect to the assessment of Martin's credibility, ALJ Lissek had the discretion to evaluate credibility in light of the evidence and to arrive at an independent judgment. LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted). Here, ALJ Lissek gave due regard to Martin's testimony, but determined that it does not comport with the weight of the evidence, including Dr. Gordon's interrogatories and the VA record. (R. 594.) This Court finds that ALJ Lissek properly made this determination.

### E. Step Four: Whether Martin had the RFC to perform the requirements of his past relevant work

At step four, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work. See 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. See id.

In this case, Martin's previous relevant work experience included being a corrections officer and warehouse worker. (R. 591.) Based on medical reports, ALJ Lissek determined that Martin was unable to perform the requirements of his past relevant work pursuant to 20 C.F.R. § 404.1565. (R. 591.)

**F. Step Five: Whether Martin is able to do any other work considering his RFC, age, education, and work experience**

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant establishes the first four steps and demonstrates that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. See 20 C.F.R. § 416.920(g); Kangas, 823 F.2d at 777; Malloy v. Comm'r of Soc. Sec., 306 F. App'x. 761, 763 (3d Cir. 2009). The regulations allow the use of a vocational expert in reaching this decision. See 20 C.F.R. § 404.1566(e).

The ALJ must consider whether the claimant has exertional or nonexertional limitations. See C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. A limitation is nonexertional if it affects the claimant's "ability to meet the demands of [a job] other than strength demands." Id. If the limitations are solely exertional, the ALJ can use medical-vocational guidelines to determine whether the claimant can perform any other job in the national economy. Id. Also, if the claimant retains the mental capacity to perform unskilled work, the ALJ may rely on the medical-vocational guidelines. See Davis v. Astrue, No. 08-928, 2009 WL 3241853 *at 6 (W.D. Pa. Oct. 5, 2009). However, if there are both exertional and nonexertional limitations, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national economy that the claimant can perform. See Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).

*January 2001 – April 2004*

ALJ Lissek found that during the period from January 15, 2001, to April 30, 2004, Martin did not have the RFC to perform any job that existed in significant numbers in the national economy. (R. 592.) However, since drug use was a material contributing factor during that time, this Court affirms ALJ Lissek's decision that Martin must be found "not disabled" for that period.

*May 2004 – March 2005*

ALJ Lissek found that considering Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs he could perform if he stopped the substance abuse. (R. 595.) ALJ Lissek found that Plaintiff had no exertional limitations. (R. 595.) Moreover, ALJ Lissek posed a hypothetical to Feinstein regarding whether an individual with Martin's limitations could perform any jobs in the national economy. (R. 595.) Feinstein concluded that such an individual could perform the requirements of occupations such as an assembler, sewing machine operator, and cleaner/housekeeper. (R. 595.)

Martin argues that the hypothetical given to Feinstein was deficient in that it did not accurately portray his impairments and complaints. (Pl.'s Br. 16-17.) However, ALJ Lissek appropriately considered all the evidence on record and was not required to include Plaintiff's complaints in the hypothetical as she did not find them to be credible. (R. 594.) Furthermore, ALJ Lissek pointed to specific evidence in the record that contradicted Martin's complaints in making a determination that they were not credible, including the interrogatories from Dr. Gordon and the VA records. (R. 594.) Accordingly, ALJ Lissek offered a sufficiently thorough analysis of Martin's complaints in reaching her conclusion.

This Court finds that ALJ Lissek appropriately considered all the evidence in the record and affirms her determination that Martin could perform other work in the national economy for

the period of May 2004 to March 2005.  Thus, the Court holds that substantial evidence supports ALJ Lissek's decision.

**CONCLUSION**

For the foregoing reasons, this Court **AFFIRMS** ALJ Lissek's decision.

s/Susan D. Wigenton, U.S.D.J.